No. 27.—JOHN, (a slave) plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] Every one, whether bond or free, who is indicted for killing another in this State, is, in legal intendment, indicted for killing a free white man. If the killing is of *a slave* or *free person of color*, or any one within the exceptional cases, the indictment should so charge it.

[2.] A remark made by the Juror, at the moment of the trial, who neither knew of the offence or the offender, made for the purpose of getting off from serving on the Jury, is no disqualification.

[3.] Before the accused shall be considered as having used due diligence to ascertain the competency of a Juror, would it not be best to require that the test as to indifferency, furnished by the Act of 1843, be applied, before the Juror is accepted by the prisoner?   *Quere.*

[4.] Where the character of a witness, who is sworn on the direct examination, is impeached, it is competent for the State to introduce testimony, to the effect that the facts testified to by the discredited witness, are true.

[5.] A judgment of the Circuit Court will not be reversed, on the ground that the Judge rendering it, admitted *legal testimony* at any stage of the trial.

[6.] Neither the Acts of 1816 or 1821, relative to the trial of slaves and free persons of color, contain any definitions as to the various grades of homicide. And recourse must be had for this purpose, to the 4th division of the Penal Code.

[7.] The killing of a *free white man* by a *slave* cannot be *manslaughter.*

Indictment for murder, in Bibb Superior Court.   Tried before Judge POWERS, November Term, 1853.

The defendant, John, was indicted for the murder of Mark Swinney. For the State, Fardy Swinney, the father of deceased, testified to the facts of the murder. The defendant's Counsel, when the State had closed, moved for a verdict of acquittal, on the ground that the indictment did not disclose the *status* or condition of the deceased; that is, did not state whether he was a free white person, or a slave, or free negro, or an Indian. The motion was refused, which is alleged as error.

Several witnesses were then introduced on behalf of the defendant, by whom the general character of the witness, Fardy

Swinney, for truth, was attacked.  The defendant's testimony being concluded, the State called James Dimon, who proved facts going to show that the deceased had died from wounds with a knife, as Fardy Swinney had testified.

This evidence was objected to as not being in rebuttal. The Court over-ruled the objection, which is alleged as error. The presiding Judge, in his charge to the Jury, read to them, as law applicable to the case, from the 4th to the 11th sections of the Penal Code, which is excepted to.

The Jury returned a verdict of guilty.

After the verdict, defendant's Counsel moved for a new trial, on affidavits showing that one of the Jurors, after he was summoned as talesman, and before he was sworn in chief, had said that if he was on the Jury he would hang the prisoner—which fact was not known to the prisoner or his Counsel, before the trial.

The State, in showing cause against the motion, produced the affidavit of the Juror in question, stating that he had made the remark as a mere idle jest—that he did not then know who had been killed, or what negro was to be tried; and that he made up his verdict solely on the evidence, and the law, as charged by the Court.

The motion was refused, and this also is alleged as error.

WHITTLE; R. P. HALL, for plaintiff in error.

DeGRAFFENREID, Sol. Gen. and LOCHRANE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] As it respects the supposed defect in the indictment, our opinion is, that it means a free white man, and no one else. Every one, whether bond or free, who is indicted for killing another in this State, is, in legal contemplation, indicted for killing a free white man.  And, under this indictment, the ac-

xvi—26

cused could not have been put upon his trial for the killing of a slave or free person of color. If the killing is within one of the exceptional cases, the indictment should so state it.

[2.] We have often, of late, had this objection as to a Juror, urged upon us as a ground for a new trial. And we must say, that this is the weakest case which has yet been presented. It is apparent, that the Juror made the remark attributed to him, at the moment, and for the purpose, probably, of getting off from serving on the Jury.

[3.] As this ground comes up in every application for a new trial, in a capital case, we may feel it to be our duty, before entertaining it at all, to require the accused to apply the tests furnished by the Act of 1843, for ascertaining the indifferency of a Juror.

By the XXXVIIIth section of the Judiciary Act of 1799, all exceptions to Jurors in *civil cases,* must be taken, before they are sworn. (*Cobb's Dig.* 546.) The spirit of this provision would seem to require that due diligence, at least, would be required, before a new trial would be granted in a *criminal case,* on account of the disqualification of the Juror.

[4.] As to the introduction of James Dimon, whose testimony, it is contended, was not in rebuttal, we have this to say : the witness proved facts which went to sustain the veracity of Fardy Swinney, whose character was impeached.

[5.] Moreover, we could hardly get our consent to reverse a judgment, on the ground, that the Court rendering it erred in admitting legal testimony, at any stage of the trial. We do not say that we would over-rule a Judge for refusing to allow it, under all circumstances.

[6.] The last assignment is, that the Court erred in reading to the Jury, by way of charge, from the 4th division of the Penal Code ; and from the 1st to the 11th section, inclusive, of that division.

From what else should the Judge have read, to instruct the Jury, as to the law of homicide, both as to its definitions and various grades ? Neither the Acts of 1816 or 1821, or any other statute, exclusively applicable to slaves, defines murder

or justifiable homicide. The presiding Judge, then, must have resorted to the Common Law or the Penal Code, or left the Jury uninstructed as to their duty.

We think he was right in looking to the Code for the Law, especially as the Act of 1850, providing for the trial of slaves, enacts, that from the finding of the bill to the rendition of the verdict, the trial shall be governed by the Code. This includes, of course, the definition of the offence.

[7.] If there was error in the Court at all, it was in submitting to the Jury those sections of the 4th division as to manslaughter; an offence, which, in the opinion of this Court, cannot exist under our law, as between a slave and a free white person, where the former is the slayer. That every such killing is murder, or justifiable homicide. It is supposed, that where a slave is under an absolute and inexorable necessity, to take the life of a white man to save his own, who has no right to punish him or control him in any manner whatever, that such killing will be excusable. And it may be so. For myself, I have formed no very definite opinion upon this subject. But a stern and unbending necessity forbids that any such allowance should be made for the infirmity of temper or passion on the part of a slave, as to reduce or mitigate his crime from murder to manslaughter.